**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

United States of America,

      Plaintiff

v.

Murrell Vailes,

      Defendant

Case No.: 2:22-cr-00104-JAD-BNW

**Order Adopting the Magistrate Judge's Report and Recommendation and Denying Defendant's Motion to Suppress**

[ECF Nos. 22, 38, 59]

Defendant Murrell Vailes is charged with illegally owning firearms and possessing methamphetamine with intent to distribute it.[1]  Those guns and drugs were found during a search of his home and car that was initially authorized by a search warrant seeking evidence of pandering based on the testimony of an undercover detective to whom Vailes offered his pimp services.  After discovering the guns and drugs, the officers obtained a "piggyback warrant" and seized them, resulting in this prosecution.

Vailes moves to suppress all evidence seized under that piggyback warrant, arguing that the first warrant lacked probable cause and was overbroad, and all evidence obtained with the second warrant is the fruit of that poisonous tree.  Magistrate Judge Brenda Weksler recommends that the motion be denied because the police had a good-faith basis for their search and the initial warrant was not unconstitutionally overbroad.  Vailes objects.

On de novo review, I find that the warrant and the particular items listed to be seized reasonably stemmed from evidence related to Vailes's pandering charges and were not so overbroad as to be constitutionally deficient.  And Vailes's argument that the warrant fails for lack of probable cause that he was engaged in the separate crime of sex trafficking is supported

---

[1] ECF No. 1 (indictment).

1  by only a hypertechnical read of the search warrant that is not justified here.  So I overrule

2  Vailes's objection, adopt the magistrate judge's recommendation, and deny the motion to

3  suppress.

4  **Discussion**[2]

5  **A.    Legal standards**

6     *1.    Reviewing a magistrate judge's report and recommendation*

7         When a party objects to a magistrate judge's report and recommendation on a motion to

8  suppress evidence, the district court must conduct a de novo review of the challenged findings

9  and recommendations.[3]  The district judge "may accept, reject, or modify the recommendation,

10  receive further evidence, or resubmit the matter to the magistrate judge with instructions."[4]

11     *2.    Fourth Amendment search and seizure*

12         The Fourth Amendment prohibits the search and seizure of a person's "house, papers,

13  and effects" without a showing of probable cause.[5]  Probable cause exists if, based on the totality

14  of the circumstances, there is a "fair probability that contraband or evidence of a crime will be

15  found in a particular place."[6]  The magistrate judge need not determine "that the evidence is

16  more likely than not to be found where the search takes place," she "need only conclude that it

17  would be reasonable to seek the evidence in the place indicated in the affidavit."[7]  Federal courts

18

19  _____

    [2] Vailes does not object to the magistrate judge's overview of the facts leading to execution of
20  the warrants.  So I adopt those facts, ECF No. 38 at 2–7, and do not repeat them here.

    [3] Fed. R. Crim. P. 56(b)(1)–(3).
21
    [4] *Id.*
22
    [5] U.S. Const. amend IV.
23
    [6] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

    [7] *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir. 1991) (quoting *United States v. Fannin*,
    817 F.2d 1379, 1382 (9th Cir. 1987)).

1   pay "great deference" to a "magistrate's determination of probable cause"[8] and "should not

2   invalidate warrants by interpreting affidavits in a hyper-technical, rather than a commonsense,

3   manner."[9]

4

5   **B.    Vailes's insistence that the initial warrant was a fishing expedition to find evidence
        of sex trafficking is unsupported by the record.**

6          Vailes primarily argues that the initial warrant wasn't really intended to search for

7   evidence of pandering—it was instead targeted at evidence of sex trafficking.[10]  He points to two

8   sentences in the 13-page warrant in which the affiant "prays for the search and seizure of

9   possessory items located inside Vailes's residence and both vehicles in an attempt to locate

10  additional victims of sex trafficking . . . [and] for the search and seizure of Vailes's additional

11  cellphone [and] cellular devices because . . . cellular devices are commonly used for

12  communication with potential victims of sex trafficking."[11]  He contends that these statements,

13  along with sporadic mentions of his travels to California with other women while they engaged

14  in prostitution, demonstrates that the officers were really trying to nail him for sex trafficking

15  and that their evidence did not support probable cause that Vailes was committing that crime.

16         The magistrate judge found that, "whether officers were looking" for evidence of sex

17  trafficking "for the incidental purpose of later locating additional victims of sex trafficking is

18  irrelevant to whether the warrant was properly issued based on a pandering offense."[12]  She

19  relied on the Ninth Circuit's recognition in *United States v. Ewain* that an ulterior motive "does

20

21  [8] *Gates*, 462 U.S. at 236 (quotation omitted).

    [9] *Id.* at 236 (cleaned up).

22  [10] ECF No. 22 at 7–8; ECF No. 59 at 4–9.

23  [11] ECF No. 22-1 at 10.

    [12] ECF No. 38 at 8.

3

not bar a search within the scope of" a properly issued warrant.[13]  Vailes objects to that reliance, arguing that, because the search warrant was *really* about sex trafficking, this wasn't the ulterior motive, it was the primary one.

Vailes's myopic reading finds little to no support in the search warrant itself.  The affidavit specifically states that the items sought to be seized "constitute evidence [that] tends to show the criminal offense of pandering [has] been committed."[14]  The detailed overview of the evidence primarily concerns pandering.  The officer recounts that Vailes approached the undercover detective; offered to be her pimp; and asked her if she was ready to "choose up," a term that the affiant explained is a fee that a pimp expects a sex worker to pay "to show her loyalty to him in exchange for knowledge of the game."[15]  Vailes gave the undercover detective advice on where to work in order to make more money.[16]  He also told her that he gives "his sex workers the tools to use while they engage in prostitution; however, he cannot be out there with them while engaging in prostitution and stays at home."[17]  Officers placed Vailes under surveillance after this meeting and observed him "sweating multiple girls on the Tropicana Corridor."[18]  In prostitution subculture, "sweating" "is a common term . . . to refer to a pimp . . . verbally putting pressure on a sex worker to work for him."[19]  In the following days, the undercover detective and Vailes had several text conversations, all of which involved Vailes

---

[13] *Id.* (citing *United States v. Ewain*, 88 F.3d 689, 694 (9th Cir. 1996).

[14] *Id.* at 3 (cleaned up).

[15] *Id.* at 6.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 7.

[19] *Id.*

attempting to get the detective to choose up.  He also told her that he was traveling with other sex workers in California and would not leave until they were "ready to come back with him to Las Vegas."[20]  The majority of the search warrant's seizure requests involved items that the affiant explained were relevant to persons working as pimps, including detailed descriptions of how those items are commonly used in prostitution activity.[21]

While sex trafficking and human trafficking are occasionally mentioned in the warrant, the focus of each request is Vailes's monitored *pandering* activity.  Vailes doesn't sufficiently explain why the entirety of the warrant and the subsequent piggyback warrant should be invalidated for the scarce mention of sex trafficking.  Even if Vailes could show that the warrant was really seeking evidence of sex trafficking, the remedy would be to sever that portion of the warrant and suppress only the evidence that stemmed from that ulterior purpose[22]—which appears to be limited to "possessory items" of potential sex-trafficking victims, as everything else sought to be seized is justified by the officers' investigation into Vailes's pandering activity.

---

[20] *Id.* at 8.

[21] *See, e.g.*, *id.* at 8 (seeking records, ledgers, and diaries because "persons involved in prostitution activity will often keep" those items to "document[] the business of prostitution and/or keep monies earned, customer lists, and owe sheet[s]"); *id.* at 9 (seeking condoms because "it is also known that panderers/human traffickers will often give their victims that work for them condoms to use during sex acts"); *id.* (seeking photographs and digital devices because "it is also common for pimps/human traffickers to keep photographs of the prostitutes who work for them" and to store them on "discs, cellphones, computers, electronic tablets, [or] cameras").

[22] *See United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984) (the doctrine of severance permits courts to "strike from a warrant those portions that are invalid and preserve those portions that satisfy the Fourth Amendment").

**C.     The magistrate judge correctly found that the executing officers relied in good faith on the facially valid warrant.**

Even if the warrant was overbroad or otherwise invalid, the evidence here would be spared from suppression based on the good-faith exception.  The Fourth Amendment's exclusionary rule doesn't apply when the evidence was seized in objectively reasonable, good-faith reliance on a facially valid search warrant.  "Searches [under] a search warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate [judge] normally suffices to establish that a law[-]enforcement officer has acted in good faith in conducting the search."[23]  But there are some situations in which the Ninth Circuit has deemed an officer's reliance not objectively reasonable:

> (1) where the affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge; (2) where the judge wholly abandons his or her judicial role; (3) where the affidavit is so lacking in indicia of probable cause [that] official belief in its existence [is] entirely unreasonable; and (4) where the warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.[24]

Because the parties' dispute centers around the third scenario, the magistrate judge first analyzed whether the affidavit is so lacking in indicia of probable cause as to render reliance on the warrant unreasonable.  She concluded that there was a colorable argument for probable cause that: (1) Vailes was engaged in pandering; (2) Vailes possessed the items sought to be seized; (3) Vailes lived at the apartment to be searched; (4) the evidence sought would be kept at Vailes's apartment; and (5) the evidence sought would be kept in Vailes's Range Rover.  She also noted

---

[23] *Leon*, 468 U.S. at 922 (internal citations and quotation omitted).

[24] *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013).  The fourth scenario overlaps significantly with the standard to determine whether a warrant is facially overbroad, so I address that standard in the following section on overbreadth.  *See infra* at pp. 10–13.

6

that a district attorney reviewed the warrant before the officer presented it to the magistrate judge, further "supporting the notion that officers reasonably believed the warrant was supported by probable cause."[25]  Vailes objects to both of these determinations.

### 1.    The warrant is not so lacking in indicia of probable cause that reliance on it was unreasonable.

A warrant is so lacking in indicia of probable cause as to render belief in its existence unreasonable if "it fails to provide a colorable argument for probable cause."[26]  "A colorable argument is made when thoughtful and competent judges could disagree that probable cause does not exist."[27]  Vailes doesn't specifically object to any of the magistrate judge's findings that there were colorable arguments to support each aspect of the warrant.  He instead vaguely asserts that the warrant "failed to establish probable cause that evidence of the target crimes (sex trafficking or pandering) would be found in Vailes's apartment or vehicles" and that "a reasonable officer looking at the four corners of the warrant would plainly see there was no connection between the offenses and the items to be seized from the home."[28]

The magistrate judge thoroughly explained why a thoughtful and competent judge could find probable cause to believe that items of Vailes's pandering activity would be found at his home or in his car "based on the nature of the evidence and the type of offense."[29]  She analogized this case to *Johnson v. Walton*, in which officers had information that a business was a front for prostitution and executed a warrant on the business owner's home to find further

---

[25] ECF No. 38 at 16.

[26] *Underwood*, 725 F.3d at 1085.

[27] *Id.*

[28] ECF No. 59 at 15.

[29] ECF No. 38 at 13 (quoting *Blight v. City of Manteca*, 944 F.3d 1061, 1067 (9th Cir. 2019)).

evidence of the crime, without any specific evidence linking that home to criminal activity.[30] The Ninth Circuit acknowledged that the affidavit would have been better if it explained that, in the officer's experience, evidence of such crimes would likely be kept at a person's personal residence, but it held that the affidavit was not so lacking in probable cause that it rendered the officer's reliance on the warrant unreasonable.[31]

Vailes does not attempt to distinguish this case from *Johnson* or further explain the deficiencies he sees in the warrant's ties to the places to be searched.  He also ignores evidence relevant to the search locations, like that fact that he told the undercover agent that he "stays home" while directing the prostitution activity of the women he pimps for and he offered to let her move into that home once she chose up—directly tying Vailes's home to his pandering activities.  And the officer sufficiently explained in the warrant that Vailes attempted from his Range Rover to entice the undercover agent and other women—directly tying his pandering activities to that car.  So I find that the warrant sufficiently connected Vailes's illicit activities and his home and car to support an officer's good-faith reliance that the warrant established probable cause to search those locations.

### 2. The magistrate judge correctly concluded that the district attorney's review of the warrant supported the officers' good-faith reliance.

The magistrate judge also noted that the district attorney signed off on the warrant before it was presented to the judge, lending further support to the officers' good-faith reliance on its validity.[32]  She relied on *Messerschmidt v. Millender*, in which the Supreme Court of the United

---

[30] *Johnson v. Walton*, 558 F.3d 1106, 1108–09 (9th Cir. 2009).

[31] *Id.* at 1111.

[32] ECF No. 38 at 16.

States held that approval of a warrant by a deputy district attorney is relevant to whether an officer reasonably relied on the warrant's validity.[33]  Without much analysis, Vailes argues that *Messerschmidt* is distinguishable and the magistrate judge erred in relying on it because other indicia of probable cause existed in *Messerschmidt* that are absent here.[34]

But this warrant had as much indicia of probable cause as the one in *Messerschmidt*.  For example, there was direct evidence that Vailes solicited an undercover agent to engage in prostitution.[35]  Vailes indicated that he would accept cash from the agent and expected to receive all of her earnings in exchange for him supplying housing, transportation, and other financial support.[36]  He told the agent that he had several women working for him, that he was a "virtual teacher" for those women, and that he remained at home while they performed their sex work.[37] He continued pressuring the undercover agent to pay his choose-up fee and told her he was trying to move her into his home.[38]  In short, ample details supported the reasonable reliance on the validity of the warrant.  So, as *Messerschmidt* instructs, the magistrate judge could consider the fact that a district attorney reviewed the warrant as additional support for the officers' reasonable reliance on its validity.  So I overrule Vailes's objection to the magistrate judge's reliance on *Messerschmidt* and the district attorney's review.

---

[33] *Messerschmidt v. Millender*, 565 U.S. 535, 555 (2012).

[34] ECF No. 59 at 14.

[35] ECF No. 22-1 at 5–7.

[36] *Id.* at 6.

[37] *Id.*

[38] *Id.* at 8.

**D.      The warrant was not unconstitutionally overbroad.**

Vailes's final objection targets the scope of the warrant and some of the specific items it sought.  "The Fourth Amendment requires that a warrant particularly describe both the place to be searched and the person or things to be seized."[39]  The warrant "must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized."[40]  This rule is meant to prevent "general, exploratory searches and indiscriminate rummaging through a person's belongings."[41]  But the specificity required depends on the circumstances.  "Warrants [that] describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible."[42]  To determine whether a description is precise enough, courts consider

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.[43]

**1.      *There was probable cause to seize the items described in the warrant.***

Vailes contends that probable cause didn't exist to seize the cash and condoms specifically listed in the warrant because he never took cash from the undercover agent or gave

---

[39] *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).

[40] *Id.*

[41] *Id.*

[42] *United States v. Adjani*, 452 F.3d 1140, 1147–48 (9th Cir. 2006) (quoting *Spilotro*, 800 F.2d at 963).

[43] *Id.* at 1148 (quoting *Spilotro*, 800 F.2d at 963).

her condoms.  But as the magistrate judge noted, the affidavit established evidence of Vailes pandering multiple women, including at least the "undercover officer, his bottom,[44] and another sex worker in San Bernadino."[45]  The affiant used his knowledge, experience, and training to establish that, when evidence shows that a suspect is engaging in criminal pandering (as it does here), those suspects have cash, condoms, cellphones, and other items that are used in the commission of that crime.[46]  And the affiant specifically explained each category's relevance to the crime Vailes was suspected of, including the electronic devices (they may hold photographs of women Vailes was enticing to engage in prostitution), condoms (pimps usually supply them to their prostitutes), and cash (they typically deal in cash).[47]  That Vailes did not accept cash from, give condoms to, or take photos of the undercover agent did not deprive the officers of probable cause to seek those things, given the overall evidence of Vailes's culpability and the affiant's training and experience.

### 2.   *Objective standards were used to differentiate items subject to seizure.*

Vailes also contends that four categories of items described in the warrant did not set out objective standards by which executing officers could differentiate items subject to seizure from items that were not.  He argues that the category describing things like condoms and lubrication "does not in the context of this case establish evidence of a crime, but rather of [his] own intimate life."[48]  The category describing "bank cards and money" is overbroad too, Vailes

---

[44] As the affidavit explained, a "bottom" in prostitution subculture refers to "a sex worker who sits at the top of the hierarchy of sex workers who work for a pimp."  ECF No. 22-1 at 8.

[45] ECF No. 38 at 19.

[46] ECF No. 22-1 at 10–11.

[47] *Id.*

[48] ECF No. 59 at 12.

contends, because "such items could be found in nearly every home and car in America."[49] Vailes argues that the category describing computers and cellphones is overbroad because the warrant didn't involve allegations of cyber-crime or pornography.[50]  As for the last category, Vailes suggests that the officers didn't need further evidence of who lived in that apartment because "the officers already knew [that] Vailes lived at the residence alone by confirming with the leasing office, utility company, and their own surveillance."[51]

Vailes's arguments ignore the qualifying language that the warrant included in some of these categories.  The first category specifies the condoms and similar items as "items of prostitution" and limits the collection of diaries, ledgers, and owe sheets to those that appear to be "records of prostitution activity."[52]  The last category specifically limits seizure of personal property to those items that "tend to establish a possessory interest in the items sought to be seized."[53]  Vailes's contention that the officers "already knew" that Vailes lived alone based on a lease, a utility bill, and limited surveillance does not undermine the probable cause to believe that other individuals were living at the apartment, particularly when he told the undercover detective that he essentially worked as a pimp from this home and offered to have her live with him if she'd come work for him.

The middle two categories seeking currency and electronic devices do not specify limitations to the items to be seized.  But, read as a whole, the affidavit sufficiently explains that Vailes used a cellphone to speak with the undercover agent, that cellphones are often used by

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] ECF No. 22-1 at 3.

[53] *Id.*

pimps to communicate with the sex workers they employ, and that photographs of the women they employ are often kept on various electronic devices.  It also provides evidence that Vailes was planning to meet the undercover agent and collect the choose-up fee after she explained that she only had cash and that, based on the affiant's training and experience, pimps "will commonly be in possession of large amount[s] of money" because most commercial sex customers pay in cash.[54]  Because the warrant included references to "specific illegal activity" that, in this case, provided "substantive guidance for the officer's discretion in executing the warrant" to seize those specific items,[55] I find that it sufficiently differentiated between items to be seized and those that were off limits.

### 3.    The affiant did not need to describe the items to be seized with more particularity.

As his final point, Vailes contends that the affiant could have described the items with more specificity.  But to support this contention, he merely regurgitates the same points he offered for his argument that the warrant lacked probable cause: the officer had "no information that Vailes was using his home or vehicles for criminal activity," knew that he lived alone, and had evidence to support only the suspicion that Vailes was pandering the undercover officer.[56]  Vailes thus contends that the warrant "should have been limited to items relevant to pandering the undercover officer."[57]  But those assertions fail for the same reason they did *supra*.  So I adopt the magistrate judge's finding that the warrant was not overbroad.

---

[54] *Id.* at 11.

[55] *Spilotro*, 800 F.2d at 964.

[56] ECF No. 59 at 13–14.

[57] *Id.* at 14.

**Conclusion**

IT IS THEREFORE ORDERED that Vailes's objections to the magistrate judge's report and recommendation **[ECF No. 59] are OVERRULED** and the recommendation **[ECF No. 38] is ADOPTED in its entirety**. Vailes's motion to suppress **[ECF No. 22] is DENIED**.

_____

U.S. District Judge Jennifer A. Dorsey

August 21, 2023